LILLIAN UNZICKER, APPELLANT V. FRANK UNZICKER, APPELLEE.

FILED DECEMBER 1, 1917.   No. 19599.

1. **Divorce:** PERSONAL VIOLENCE. Although unpleasant relations between husband and wife have been caused by the intermeddling of third parties, and not wholly by the husband himself, such cir-

cumstances will not justify him in using personal violence against
his wife.

2. ——————: ——————. The law does not allow a husband to use personal
violence against his wife even for her own good. He cannot justify
striking or slapping his wife by showing that it was necessary to
to do so in order to compel her to go out for a ride for the benefit
of her health.

APPEAL from the district court for Deuel county: HAN-
SON M. GRIMES, JUDGE. *Reversed, with directions.*

*Hoagland & Hoagland,* for appellant.

*L. O. Pfeiffer, contra.*

SEDGWICK, J.

The plaintiff, in her petition in the district court for
Deuel county, asked for a divorce from the defendant upon
the ground of cruelty, and asked for the custody and care
of her infant daughter. The trial court, after hearing the
evidence, dismissed her petition, and left the infant daugh-
ter in the custody of the defendant. The plaintiff has ap-
pealed.

From the pleadings and evidence it appears that these
parties were married in June, 1912. They went to live at
a hotel that was being managed by the defendant's mother,
who was separated from her husband. There was an under-
standing between the parties at the time of their marriage
that they would live a short time at this hotel and would
then live in a home by themselves. There was more or less
trouble between these parties from the time of their mar-
riage and during all the time that they stayed at the hotel.
They were young, and the plaintiff's father and mother
and the mother of the defendant appear to have disagreed,
and perhaps to have quarrelled and to have interfered too
much with these young people. This may have been largely
the cause of their trouble, and it is difficult to tell from
the evidence who of these older people was more at fault
and was most responsible for the trouble between this
husband and wife. They lived at the hotel for nearly a year,
and during that time the plaintiff was called upon to and

did perform services that she disliked to perform in connection with the running of the hotel, and at her solicitation they began housekeeping in a small house owned by the defendant in the same town. While they lived at this house the defendant was more or less interested in the hotel and spent a portion of his time in assisting there. When they had lived by themselves for three or four months their child was born in September, 1913. In October following they returned to the hotel, and in the following month the plaintiff's father took her to a hospital in Omaha. She remained there a little more than a month, and her husband brought her back to the hotel. A few days later the plaintiff returned to the home of her father and mother, and after recovering from her illness began this action.

The plaintiff testifies that her compulsory staying at the hotel and her treatment there was the cause of her illness. The defendant and his mother represent that the conduct of the plaintiff herself and of her parents was the cause of her trouble, and, as we have already suggested, it is difficult to tell from this evidence which party was the most at fault in causing the general conditions that existed. It, however, seems clear from the evidence of the plaintiff and the admissions of the defendant that these unfortunate conditions led the defendant and his mother to suppose that they were justifiable and were required to use force and violence against the plaintiff, which the law will not justify. The plaintiff alleges that, when the defendant took her from the hospital in Omaha, she was not able to travel, and that after he had taken her to the hotel of her mother-in-law he "slapped her because she refused to go out into the cold while she was ill and in a state of nervous collapse, and that the defendant cruelly compelled the plaintiff to go with him." In answer to this allegation, the defendant does not contend that the plaintiff was in good health at the time, or that she desired or was willing to go out of the house upon that occasion, but insists that the local physician and the doctor at Omaha advised it, and says: "The defendant insisted upon plaintiff's getting out on account of her health, and, while trying to get plaintiff properly dressed

so she might go out, the plaintiff bit the defendant and he warded her from injuring him." These physicians, on whose advice he relied, were not present at the time, and it does not appear that they advised him to force her to go out when she herself felt unable to do so. He concedes that he was trying to get her "properly dressed" against her will, and that in doing so he had to do what he did to prevent her from injuring him, and justifies this by saying that before that time she was "getting better under the efforts of the defendant." The defendant was evidently advised by his mother that the plaintiff needed such treatment, and under the influence of his mother he may have thought that it was in the interests of all parties concerned that he should so treat his wife. He should have disregarded such advice. The law does not require the plaintiff to submit to such treatment. It amounts to cruelty.

There are other circumstances of cruelty disclosed in this record. While the plaintiff was holding her infant girl, not yet a year old, in her arms, the defendant took the child from her by force and against her will. These and other acts of violence that are substantially conceded by the defendant justified the plaintiff in returning to her parents and amount to extreme cruelty. The plaintiff should have been granted a divorce.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a decree of divorce from the bonds of matrimony in favor of the plaintiff, and giving her the custody and care of the infant child. The defendant should pay the costs of these proceedings and a reasonable attorney fee, and the trial court should determine the question of alimony and the support of the child. For this purpose the parties should be allowed to amend their pleadings and introduce further evidence if so advised.

REVERSED.

MORRISSEY, C. J. I dissent from the majority opinion because it does not seem to me to be a fair reflection of the evidence.

LETTON, J., concurs in this dissent.